IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>vs.<br><br>CLODOALDO GARCIA-RAMIREZ, et al.,<br><br>  Defendants. | MEMORANDUM DECISION AND ORDER DENYING MOTION TO SUPPRESS<br><br><br><br>Case No. 2:07-CR-572 TS |

This matter comes before the Court on Defendants' Motion to Suppress.[1]  In addition, Defendant Hernandez-Lopez filed a Motion to Supplement the Motion to Suppress.[2]  Of the twenty-six defendants in this case, eight defendants have joined in the Motion to Suppress,[3] and three have joined in the Motion to Supplement.[4]

For the reasons discussed below, the Motion to Suppress will be denied.

---

[1]Docket No. 173.

[2]Docket No. 192.

[3]Defendants Garcia-Ramirez, Rios-Guerrero, Preciado-Gonzalez, Hernandez-Lopez, Soto-Medina, Romero Ruvalcaba, Isiodia, and Soriano-Esqueda.

[4]Defendants Hernandez-Lopez, Romero Ruvalcaba and Soriano-Esqueda.

1

I.      Factual Background

Defendants seek to suppress the information gathered from electronic surveillance of three separate telephone numbers, employing two separate wiretaps. On June 21, 2007, Judge Dee Benson issued an order, pursuant to 18 U.S.C. § 2518, authorizing the interception of telephone communications for two phone numbers: Telephone #1, subscribed to by Juan Rios, and Telephone #2, subscribed to by Jocsen Avila. A wiretap application and an affidavit (the "June affidavit") were submitted, detailing the basis for the wiretap.[5] Electronic surveillance commenced on June 25, 2007.

On July 25, 2007, the government sought an extension of the order with respect to Telephone #1, and also requested an additional wiretap on a third phone number, Telephone #3, subscribed to by Jose Castaneda. An application and affidavit (the "July affidavit) were submitted in support, and this order was granted. The government terminated monitoring of Telephone #2, on July 24, 2007, and terminated monitoring Telephone #1 and Telephone #3, on August 18, 2007. A motion to seal the recordings for all three lines was filed by the government on August 28, 2007.

The information gathered in the wiretaps included multiple conversations between various defendants. This information was then used to indict twenty-six defendants in a thirty-eight count indictment, alleging that Defendants were involved in a drug conspiracy (the "Garcia organization").

---

[5]The applications and supporting affidavits for both wiretaps are attached to the government's response brief (Docket No. 229). As both are quite lengthy, they will not be recited at great length here.

II.     Procedural History

Defendant Soto-Medina filed the instant Motion to Suppress. Defendant Hernandez-Lopez submitted the Memorandum in Support.[6] Counsel for Defendant Hernandez-Lopez indicated to the Court that his brief was being submitted on behalf of all defendants who had joined in Soto-Medina's motion. This Motion seeks the suppression of calls monitored on two of the phones, Telephones #1 and #2. The parties did not request an evidentiary hearing. Defendant submitted his Memorandum in Support on April 1, 2008, and the government's response was filed on May 5, 2008.[7] On May 19, 2008, Magistrate Judge Warner granted a Motion for Extension of Time, giving Defendants until June 6, 2008, to file a reply brief.[8] Shortly after that deadline passed, the Court contacted defense counsel and was informed that no reply would be filed. The Court will consider the motion as fully briefed as of June 6, 2008.

Defendant Hernandez-Lopez filed the Motion to Supplement, which seeks the suppression of calls monitored on Telephone #3. The Court will consider both motions together.

III.    Discussion

Defendants argue that the government failed to establish the necessity requirement in the affidavits supporting the initial wiretap or the extension. Defendants also argue that the government has failed to satisfy the statutory sealing requirements for the information that was intercepted during the wiretaps. Based on these purported failures, Defendants argue that suppression of the gathered evidence is appropriate.

---

[6]Docket No. 204.

[7]Docket No. 229.

[8]Docket No. 236.

The government argues that denial of the Motion to Suppress is proper because the element of necessity and the sealing requirements were met.

A.   Necessity

The 10th Circuit has observed that the State and Federal statues governing wiretaps are "substantially identical" and as such, federal law is used to review "the admissibility of the evidence derived" from the interceptions.[9]  18 U.S.C. §§ 2510-2522 sets forth a "strict framework for authorizing electronic eavesdropping by law enforcement officials."[10]   A wiretap "authorization order is presumed proper, and the defendant bears the burden of overcoming this presumption."[11]  "The defendants must make a *prima facie* showing that the wiretap was conducted pursuant to an illegal order."[12]  "Suppression under 18 U.S.C. § 2518(10)(a) is required for failure to satisfy any of those statutory requirements that directly and substantially implement the congressional intention to limit the use of intercept procedures to those situations clearly calling for the employment of extraordinary investigative device."[13]

One of the findings a judge must make when authorizing a wiretap is that "normal investigative procedures have been tried and have failed or reasonably appear to be unlikely to

---

[9]*United States v. Quintana,* 70 F.3d 1167, 1169 (10th Cir. 1995).

[10]*United States v. Garcia*, 232 F.3d 1309, 1312 (10th Cir. 2000).

[11]*United States v. Killingsworth*, 117 F.3d 1159, 1163 (10th Cir. 1997).

[12]*United States v. Barrios*, 994 F.Supp. 1257, 1261 (D. Colo. 1998).

[13]*Id.* (internal citation and quotation marks omitted).

succeed if tried or to be too dangerous."[14]  This is known as the "necessity" requirement.[15]  Under the necessity requirement,

> [t]o obtain an electronic surveillance order, the government must explain fully in its application what investigative techniques have been tried against the target of the wiretap. If any of the four categories of normal investigative techniques referred to in the legislative history of Title III have not been tried, the government must explain with particularity why each of such untried techniques would be either unsuccessful or too dangerous.  Those investigative procedures are: (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants (including the use of grand juries and the grant of immunity if necessary); (3) use of search warrants; and (4) infiltration of conspiratorial groups by undercover agents or informants.  In addition, if other normal investigative techniques such as pen registers or trap and trace devices have not been tried, a similar explanation must be offered as to why they would also be unsuccessful or too dangerous.  We add pen registers and trap and trace devices to this list because they possess a logical relationship and close affinity to wiretaps and yet are less intrusive.  Thus, unless the government can show that they would be ineffective or dangerous they must be tried before resorting to wiretaps.[16]

"However, the government need not exhaust or explain its failure to exhaust every *conceivable* investigative procedure before resorting to wiretapping."[17]  Further, the reviewing judge begins with the presumption that the order is valid, and defendant bears the burden of overcoming that presumption.[18]

In this case, the supporting affidavits detail at great length the investigative procedures undertaken prior to the wiretap, clearly stating the extent of information gathered and resulting shortcomings of each investigative procedure, which necessitated a wiretap in order to obtain

---

[14]*Killingsworth*, 117 F.3d at 1163 (quoting 18 U.S.C. §2518(3)(c)).

[15]*Id*.

[16]*Id*.

[17]*United States v. Castillo-Garcia*, 117 F.3d 1179, 1188 (10th Cir. 1997) (citing *United States v. Mesa-Rincon*, 911 F.2d 1433, 1444 (10th Cir. 1990)).

[18]*Id*. at 1186.

adequate information to support prosecution, as summarized below.

        1.        Standard Visual and Aural Surveillance

The June affidavit discusses surveillance conducted prior to the first wiretap, including the use of a mobile tracking device on two vehicles, the use of a pole camera, and physically following one of the suspects. The affidavit explains why this type of surveillance was difficult, describing how the suspects frequent small Mexican markets that make surreptitious observation nearly impossible. The July affidavit describes how the suspects change vehicles frequently, how many of the exchanges occurred inside vehicles or other locations that officers could not observe, how pole cameras are limited in their usefulness because of poor clarity, the inability to see inside buildings where much of the activity takes place, and drug traffickers' familiarity with such devices. The July affidavit also explains that the goals of the investigation–identification of the stash house, identification of a supplier, and information regarding the profits of this organization–could not be accomplished by the surveillance techniques that investigators had already employed.

        2.        Questioning and Interrogating Witnesses

Both affidavits discuss interviews conducted with customers of the Garcia organization or with alleged co-conspirators. As stated in the affidavits, interviews with customers reveal little reliable information because they are drug addicts themselves. The affidavits also detail why interrogating members of the organization who have been arrested has been of limited use. Both affidavits describe the relative isolation of each lower-level associate, such that, even if arrested and cooperating, members are unable to provide investigators with vital information. The June affidavit referenced an interview with one suspect that supports this contention. In any case, because the members of the organization are, in large part, illegal aliens and/or related, it is

unlikely hat they would cooperate with investigators. The July affidavit referenced three suspects who were arrested and interviewed, but refused to reveal information about the organization.

        3.      Use of Search Warrants

Both affidavits contain an explanation as to why a search warrant would have likely been unsuccessful if tried, namely, because the investigators were only aware of a single location where illegal activities may have been conducted, and a search of only that location would have prematurely closed the investigation, with very few arrests. Further, the information gathered prior to the wiretap was likely insufficient to support a finding of probable cause such that a warrant could be issued at all.

        4.      Use of Undercover Agents or Informants

Both affidavits detail the efforts of investigators to infiltrate the organization with undercover agents and the information gathered from confidential sources. As discussed above, the details of this organization were not communicated to low-level associates and outsiders. Attempts to infiltrate the organization had been made, but were largely unsuccessful. While confidential sources were able to provide valuable information, the July affidavit discusses the difficulties faced when persons unknown to the organization attempted to purchase drugs.

The affidavits also detail attempts to draw out higher level associates by making large purchases, but the secretive nature of the members of this conspiracy resulted in the failure of these techniques as well.

        5.      Use of Pen Registers and Trap and Trace Devices

The affidavits detail the limitations with the use of pen registers to provide direct evidence of the significance of the telephone calls. The June affidavit confines its discussion to

these limitations.

The July affidavit describes the government's efforts to cross-reference observed behavior using information gathered from pen registers and trace devices to verify as much information as possible without resorting to wiretaps. The affidavit then details the limitations of pen registers in identifying individuals involved in drug transactions.

The Court finds that the government's explanation in each of the applications and supporting affidavits comprised a full and complete statement as to whether or not other investigative procedures had been tried and failed or why they reasonably appeared to be unlikely to succeed if tried or whether they were too dangerous. The cases cited by Defendants describe investigations in which the government employed wiretaps early on, before the other four investigative techniques were attempted. That is not the case here, where officers undertook three of the four investigative techniques, namely, (1) standard visual and aural surveillance; (2) questioning and interrogation of witnesses or participants; and (3) infiltration of conspiratorial groups by undercover agents or informants. Further, the government employed pen registers and trace devices, and cross-referenced observed behavior with phone records to verify as much information as possible without resorting to wiretaps.

The Court also finds Defendants' argument that the stated goals of the investigation were overly broad to be unavailing. Citing to a Ninth Circuit opinion, Defendants argue that the "government may not cast its investigative net so far and so wide as to manufacture necessity in all circumstances."[19] The Tenth Circuit has not adopted such a reading of the necessity requirement, but has instead allowed wiretaps where the government's application and affidavit

---

[19] *United States v. Blackmon*, 273 F.3d 1204, 1211 (9th Cir. 2001).

have contained an explanation for its use, or failure to use, normal investigative techniques.[20] The Court respectfully disagrees with Defendants' apparent contention that continuing an investigation in order to reveal major players argues against a wiretap.

Therefore, the Court finds that the supporting affidavits established the necessity of the initial wiretap.

With respect to the second wiretap, the Court finds that the analysis above applies as well.  As noted by Defendants, an extension must be "provided for separately,"[21] and the application must be made in accordance with 18 U.S.C. § 2518(5), meeting the same requirements as the original order, as well as "setting forth the results thus far obtained from the interception, or a reasonable explanation of the failure to obtain such results."[22]  The Tenth Circuit also noted that, "under Title III, [the government] must always pause to consider whether normal investigative procedures could be used effectively, particularly in light of any evidence obtained as a result of each succeeding wiretap."[23]

The July affidavit carefully details the information gathered from the first wiretap, including the use of separate telephone lines to contact distributors and to receive calls from potential buyers, which necessitated monitoring of the third number.  The July affidavit also states that several goals of the investigation–identification of the stash house, identification of a supplier, and information regarding the profits of this organization–had not been accomplished

---

[20] *See Castillo-Garcia*, 117 F.3d at 1196.

[21] *United States v. Giordano*, 416 U.S. 505, 530 (1974).

[22] 18 U.S.C. § 2518(1)(f).

[23] *Castillo-Garcia*, 117 F.3d at 1198 (internal quotations omitted).

with the first wiretap. The second wiretap only sought an extension on one of the phone lines monitored during the first wiretap because the investigation revealed that only this line would continue to yield useful information. The Court finds that the July affidavit meets both the necessity requirement and the additional requirements of 18 U.S.C. § 2518.

    B.    Sealing

Defendants argue that because there was a slight delay in sealing the recordings derived from the wiretaps, in violation of 18 U.S.C. § 2518(8)(a), the evidence gathered should be suppressed. The government argues that because of the procedures employed when Title III interceptions occur, the delay in sealing was reasonable.

Title 18, United States Code, Section 2518(8)(a) requires the government to record all intercepted communications "on tape or wire or any other comparable device." Upon expiration of the surveillance, the recordings shall be immediately sealed, and this seal "is a prerequisite to the admissibility of [the recordings]."[24] "[T]he seal is a means of ensuring that subsequent to its placement on a tape, the Government has no opportunity to tamper with, alter, or edit the conversations that have been recorded."[25] In the event of a delay in sealing the recordings, the government must provide a satisfactory explanation detailing both why a delay occurred and why it is excusable.[26]

The Court finds that any delay that may have occurred was satisfactorily explained by the

---

[24]*United States v. Ojeda Rios*, 495 U.S. 257, 263 (1990).

[25]*Id.*

[26]*Id.* at 265.

government in its response brief.[27] The government explains in detail the recording procedures and the precautions taken to ensure the integrity of the tapes. The government also explains why there was a delay due to an intervening weekend. As for the three days when the district court judge was apparently available but the government did not request a sealing order, the government notes that neither the government nor the court have any recollection as to why there was a three-day delay. However, this Court finds that there was no indication that the tapes were tampered with in any way. As noted above, sealing is required to ensure the integrity of the tapes, which is not disputed here. Therefore, the Court finds that suppression of the evidence is unwarranted.

IV.   Conclusion

For the reasons discussed above, Defendants' Motion to Suppress (Docket No. 173) is DENIED.

DATED   July 7, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[27] Docket No. 229.