IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLODOALDO GARCIA-RAMIREZ, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER ON *JAMES* ISSUES<br><br><br><br>Case No. 2:07-CR-572 TS |

This matter comes before the Court subsequent to a *James*[1] hearing that addressed issues related to the admissibility of coconspirator statements under Federal Rule of Evidence 801(d)(2)(E). As discussed below, the Court finds that a conspiracy existed and that Defendant Alfredo Rios-Guerrero and Defendant Arturo Soriano-Esqueda were members of the conspiracy.

I.  BACKGROUND

In addition to other substantive offenses, Defendants in this case are charged with conspiracy to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846.

This Court held a *James* hearing on May 23, 2008, for the purpose of determining whether a conspiracy existed and, if so, who the members of that conspiracy were.  The

---

[1] *United States v. James*, 590 F.2d 575 (5th Cir.), *cert. denied*, 442 U.S. 917 (1979).

1

Government submitted a written proffer prior to the hearing. At the hearing, the Government submitted an oral proffer and called DEA Special Agent Crosby to testify regarding the Government's investigation. After hearing Special Agent Crosby's testimony, the Court set a briefing schedule on the conspiracy issues. The Government and Defendants Arturo Soriano-Esqueda and Pedro Juan Delacruz filed memoranda.[2] Defendant Alfredo Rios-Guerrero was granted an extension of time to file a Response, which he failed to do prior to the August 8, 2008 deadline.

## II. FINDINGS OF FACT

For purposes of determining the admissibility of coconspirator statements under Rule 801(d)(2)(E) only, the Court enters the following findings of fact:

At some point prior to the summer of 2006, Clodoaldo Garcia-Ramirez began functioning as a dispatcher for a heroin and cocaine distribution system in the area surrounding Salt Lake City, Utah. Garcia-Ramirez would receive multiple calls each day from heroin and cocaine customers, after which Garcia-Ramirez would contact distributors to meet with and supply drugs to the customers. Garcia-Ramirez determined the prices his distributors would charge to customers and paid each distributor a salary. Cesar Preciado-Gonzalez, one of Garcia-Ramirez's full-time distributors, was arrested in July 2007 with a quantity of drugs in his possession.

Garcia-Ramirez and his distributors sold approximately three and a half kilograms of heroin every three weeks, which was the frequency at which he would receive shipments of heroin. Garcia-Ramirez also maintained contact with a heroin source in Mexico, negotiating

---

[2]Defendants Clodoaldo Garcia-Ramirez and Cesar Preciado-Gonzalez were in attendance at the hearing, but have since withdrawn. Defendant Anthony Alfred Sublasky filed a Reply and Withdrawal on July 14, 2008.

prices and amounts for shipments of heroin into the Salt Lake City area, and with the couriers who transported the shipments of heroin.

When Garcia-Ramirez received heroin from sources in Mexico, the drugs were kept at a single location in Magna, Utah, known as the "stash location," where distributors would receive the drugs they were to distribute to customers.[3] Couriers would arrive at the stash location with the drug shipments secreted within various compartments of cars. The drugs would be removed, money would be placed into the same compartments, and the couriers would leave. Alfredo Rios-Guerrero was responsible for maintaining the stash location, and for making sure the distributors were supplied with drugs. Rios-Guerrero would also meet with local sources to purchase cocaine, which he would then bring to the stash location for distribution.

Defendant Arturo Soriano-Esqueda ran a separate heroin distribution operation in Salt Lake City, Utah. He purchased heroin from the same source in Mexico as Garcia-Ramirez and used the same couriers to transport the drugs to the Salt Lake City area. Soriano-Esqueda was in communication with Garcia-Ramirez regarding shipments of heroin and payments for those shipments. Soriano-Esqueda would receive his heroin and make payments for the heroin through Rios-Guerrero, who was acting on behalf of Garcia-Ramirez.

In July 2007, one hundred thousand dollars, as payment for heroin received by Garcia-Ramirez and Soriano-Esqueda, was seized en route to the heroin supplier in Mexico. The money was marked with the name of Garcia-Ramirez, the nickname of Soriano-Esqueda, and the name of a third person. Moreover, those payments were not separated into separate amounts for Soriano-Esqueda and Garcia-Ramirez.

---

[3]April 14, 2008 Hearing Transcript [hereinafter *Transcript*], 10-11.

On August 17, 2007, Defendants Anthony Alfred Sublasky and Pedro Juan Delacruz arrived in the Salt Lake City and Sublasky contacted Garcia-Ramirez. These and other phone calls were entirely in Spanish and Delacruz was not identified in any phone calls. Sublasky was instructed to drive to a convenience store, where Rios-Guerrero instructed Sublasky to follow Rios-Guerrero to the stash location. After two hours, Sublasky and Delacruz left. They stayed at a hotel that night and were arrested the next day, on August 18, 2007. Upon being arrested, Sublasky stated to police that Delacruz had no knowledge of any drug shipment. After the arrest, police discovered a large amount of money hidden in the car and 3.5 kilograms of heroin was discovered at the stash location. An additional kilogram of heroin was found in the possession of Soriano-Esqueda shortly after the arrest of Sublasky and Delacruz.

### III.  ANALYSIS

Under Fed. R. Evid. 801(d)(2)(E), statements by co-conspirators are properly admissible as non-hearsay at trial if the Court determines, by a preponderance of the evidence, that (1) a conspiracy existed; (2) the declarant and the defendant were both members of the conspiracy; and (3) the statements were made in the course of and in furtherance of the conspiracy.[4] It is the burden of the government to prove each of the elements by a preponderance of the evidence and it is the trial court that determines admissibility.[5] In deciding whether the prerequisites for admission of the co-conspirator statements have been satisfied, the Court may consider the co-conspirator statements sought to be admitted as evidence of the conspiracy.[6] The Tenth Circuit

---

[4]*United States v. Urena*, 27 F.3d 1487, 1490 (10th Cir. 1994).

[5]*Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987); *United States v. Owens*, 70 F.3d 1118, 1123 (10th Cir. 1995).

[6]*United States v. Lopez-Gutierrez*, 83 F.3d 1235, 1242 (10th Cir. 1996).

has held, however, that "there need . . . be some independent evidence linking the defendant to the conspiracy."[7] "Such independent evidence may be sufficient even when it is not 'substantial.'"[8] The Tenth Circuit has defined "independent evidence" as "evidence other than the proffered [co-conspirator] statements themselves."[9]

1.   *Existence of a Conspiracy*

The first element the Court must consider is the existence of a conspiracy. "To prove conspiracy, the government must show (1) two or more persons agreed to violate the law, (2) the defendant knew the essential objectives of the conspiracy, (3) the defendant knowingly and voluntarily participated in the conspiracy, and (4) the alleged coconspirators were interdependent."[10]

    A.   <u>Agreement</u>

"'To prove an agreement, the government need not offer direct proof of an express agreement on the part of the defendant. Instead the agreement may be informal and may be inferred entirely from circumstantial evidence.'"[11] However, it is not enough for the government to show only mere association with conspirators known to be involved in crime; casual

---

[7]*United States v. Martinez*, 825 F.2d 1451, 1453 (10th Cir. 1987).

[8]*Lopez-Gutierrez*, 83 F.3d at 1242.

[9]*Martinez*, 825 F.2d at 1451.

[10]*United States v. Yehling*, 456 F.3d 1236, 1240 (10th Cir. 2006).

[11]*United States v. Pulido-Jacobo*, 377 F.3d 1124, 1129 (10th Cir. 2004) (quoting *United States v. Lang*, 364 F.3d 1210, 1223 (10th Cir. 2004)).

transactions between the defendant and conspirators known to be involved in the crime; or a buyer-seller relationship between the defendant and a member of the conspiracy.[12]

The government has presented sufficient evidence to show that there was an agreement to violate the law in this case. The essential objectives of the conspiracy in this case was the use of couriers to transport heroin from Mexico to the Salt Lake City area, where it would then be distributed through members of the conspiracy to customers in the general public. The government has presented sufficient evidence to show that multiple individuals, including Clodoaldo Garcia-Ramirez, Alfredo Rios-Guerrero, and Arturo Soriano-Esqueda knew of the essential objectives of the conspiracy. When the heroin arrived in the Salt Lake Area, Rios-Guerrero arranged for its storing, packaging, and distribution through the Magna stash location. Soriano-Esqueda was aware of the means of transporting heroin to the Salt Lake City area, as he utilized them himself for the purpose of receiving heroin for his own distribution. Soriano-Esqueda also was aware of Garcia-Ramirez's internal distribution mechanisms, and utilized them in receiving his drug shipments and making payments for them.

The government has failed, however, to offer sufficient evidence to show that Pedro Juan Delacruz knew of the conspiracy. The government has established only that he was within the car that later was found with money hidden in secret compartments. While the government has provided sufficient evidence that the money likely replaced a shipment of heroin, the government has not provided sufficient evidence that Delacruz was aware of the presence of the heroin. In fact, Sublasky, after his arrest, told police that Delacruz knew nothing about the operation and the government has provided no evidence to contradict that assertion.

---

[12]*United States v. Evans*, 970 F.2d 663, 669 (10th Cir. 1992).

B. <u>Knowledge and Voluntary Participation</u>

"A defendant may be convicted of a conspiracy only if the government proves that the defendant had knowledge of the conspiracy and voluntarily participated therein. A conspirator need not know of the existence or identify of the other members of the conspiracy or the full extent of the conspiracy, but he or she must have a general awareness of both the scope and the objective of the enterprise to be regarded as a coconspirator."[13]

The government has presented sufficient evidence to show that Arturo Soriano-Esqueda and Alfredo Rios-Guerrero knowingly and voluntarily took part in the conspiracy. As discussed above, Soriano-Esqueda knew of and utilized the supply conduits established by the conspiracy for obtaining heroin for distribution in the Salt Lake City area and Rios-Guerrero received the heroin when it arrived and arranged for its storage and distribution. However, the government has not presented sufficient evidence that Pedro Juan Delacruz had an awareness of either the scope or the objective of the enterprise.

C. <u>Interdependence</u>

"Interdependence exists when 'each alleged coconspirator . . . depend[s] on the successful operation of each 'link' in the chain to achieve the common goal.'"[14] "In other words, each coconspirator's 'actions must facilitate the endeavors of other alleged coconspirators or facilitate the venture as a whole.'"[15]

---

[13] *Evans*, 970 F.2d at 669–70 (internal quotation marks and citation omitted).

[14] *Yehling*, 456 F.3d at 1241 (quoting *United States v. Dickey*, 736 F.2d 571, 582 (10th Cir. 1984)).

[15] *Id.* (quoting *Evans*, 970 F.2d at 670).

The government has provided sufficient evidence of interdependence with regard to Alfredo Rios-Guerrero and Arturo Soriano-Esqueda. Rios-Guerrero played an essential role in receiving the heroin from couriers and assuring that distributors had sufficient drugs to provide to customers. Other members of the venture relied upon Rios-Guerrero's services, and he, in turn, relied on couriers to supply the drugs, and distributors to sell the drugs to customers.

Arturo Soriano-Esqueda relied completely upon Garcia-Ramirez and Rios-Guerrero for provision of heroin. Soriano-Esqueda was in communication with Garcia-Ramirez regarding provision of heroin, and met with Rios-Guerrero to receive actual shipments of heroin and to make payment. Soriano-Esqueda argues that his only connection with the larger conspiracy is a shared supplier.[16] However, the government has shown that "'but for' Garcia-Ramirez acting as a conduit source, Soriano-Esqueda has no heroin to distribute to customers."[17] Moreover, the fact that Soriano-Esqueda received his shipments of heroin in the same way and from the same individual (Rios-Guerrero) as the remainder of Garcia-Ramirez's distributors is clear evidence that Soriano-Esqueda's connection to Garcia-Ramirez and Rios-Guerrero went beyond occasional or sporadic contact, as alleged by Soriano-Esqueda.[18] Moreover, the evidence presented by the government that Soriano-Esqueda also operated a separate drug distribution operation does not preclude his inclusion in the general conspiracy to distribute heroin in the area surrounding Salt Lake City, Utah.

---

[16] Reply Memorandum of Defendant Arturo Soriano-Esqueda [hereinafter *Reply*], 6.

[17] Government's Response Memorandum [hereinafter *Response*], 6.

[18] *Reply* at 6.

The government has failed, however, to provide sufficient evidence that Pedro Juan Delacruz was interdependent with other co-conspirators.  The government claims that Delacruz was a courier employed to transport heroin to Garcia-Ramirez and then return money to the supplier of the heroin.[19]  While the government has provided evidence that Delacruz was at least a passenger in a car that allegedly transported heroin to Utah on behalf of the conspiracy, the government has failed to provide sufficient evidence of the existence of interdependence between Delacruz and the other links in the conspiracy.  Sublasky, who also arrived in Utah in the car that allegedly transported the heroin, stated to police after arrest that Delacruz had no knowledge of the drugs in the car.  The government has been unable to identify Delacruz on any phone calls related to the conspiracy, and the government admits that Delacruz was unknown to their investigation prior to August 17, 2007.  Moreover, the government has failed to provide sufficient evidence that the conspiracy depended upon Delacruz's actions to achieve its goals or that Delacruz relied upon any other member of the conspiracy for anything.

Based on the above, the government has shown, by a preponderance of the evidence, the existence of a conspiracy.  The government has shown that a conspiracy existed between Clodoaldo Garcia-Ramirez, Alfredo Rios-Guerrero, Arturo Soriano-Esqueda, Cesar Preciado-Gonzalez, and Anthony Alfred Sublasky.  The objective of the conspiracy was to transport in interstate commerce, and then sell, heroin.  The Court bases this conclusion on both the statements of the co-conspirators and the other supporting independent evidence presented by the government.  This independent evidence includes eyewitness accounts and surveillance video of

---

[19] *Response* at 7.

activities related to the conspiracy, as well as physical evidence obtained during the arrest of various members of the conspiracy.

### 2. *Members of the Conspiracy*

The second element the Court must consider is whether the Defendants were members of the conspiracy. Based on this and the discussion set forth above, the Court finds that the government has proven by a preponderance of the evidence that Clodoaldo Garcia-Ramirez, Alfredo Rios-Guerrero, and Arturo Soriano-Esqueda were members of the conspiracy. The Court also finds that the government has failed to prove by a preponderance of the evidence that Pedro Juan Delacruz was a member of the conspiracy.

### 3. *In Furtherance of the Conspiracy*

The third element the Court must consider is whether the statements were made in the course of and in furtherance of the conspiracy. Pursuant to a May 12, 2008, Order of the Court,[20] the government was instructed to turn over to each defendant a list of the statements allegedly made by each defendant in furtherance of the conspiracy. Also pursuant to that Order, the May 23, 2008 *James* Hearing addressed only the issues of whether a conspiracy existed and whether the defendants were part of the conspiracy. The Court therefore reserves judgment on whether the statements made were in the course of and in furtherance of the conspiracy.

## IV. CONCLUSION

For purposes of determining the admissibility of statements under Federal Rule of Evidence 801(d)(2)(E), the Court finds that a conspiracy existed for the purpose of transporting and distributing heroin. The Court also finds that Clodoaldo Garcia-Ramirez, Alfredo Rios-

---

[20] Docket No. 233.

Guerrero and Arturo Soriano-Esqueda were members of that conspiracy.  The Court finds that the government has not shown that Pedro Juan Delacruz was a member of that conspiracy.

SO ORDERED.  It is further

ORDERED that the Motions for *James* Hearings filed by Sandra L. Romero Ruvalcaba (Docket No. 117), Gustavo Hernandez-Lopez (Docket No. 124), Julio Soto-Medina (Docket No. 125), Oscar Edwardo Isiodia (Docket No. 133), Rolando Torres-Silvas (Docket No. 134), Cesar Preciado-Gonzalez (Docket No. 139), Clodoaldo Garcia-Ramirez (Docket No. 145), Arturo Soriano-Esqueda (Docket No. 148), and Anthony Alfred Sublasky (Docket No. 214) are dismissed as moot.

DATED   September 10, 2008.

BY THE COURT:

_____
TED STEWART
United States District Judge